**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **BE THE BUSH RECOVERY MINISTRIES** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **CIVIL ACTION: 22-cv-16** |
| **COFFEE COUNTY TENNESSEE,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

---

## VERIFIED COMPLAINT

---

## NATURE OF ACTION

1. Be the Bush Recovery Ministries a faith-based nonprofit organization. Plaintiff brings this action for declaratory and injunctive relief and also seeks compensatory damages based on the Defendant's deliberate and purposeful deprivation of Plaintiff's rights under the United States Constitution, the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. ("FHA"), the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq*. ("ADA"), and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, *et seq*. ("RLUIPA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over all federal claims in the Complaint arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. 3601 *et seq*., and 42 U.S.C. 2000cc *et seq*., which confers original jurisdiction on United States Courts in suits to redress the deprivation of rights, privileges, and immunities, as stated herein. This Court has jurisdiction over the request for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 3615 and 12133, and Rule 57 of the Federal Rules of Civil Procedure.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391. Defendant and the Plaintiff are located in this District. All events giving rise to this action occurred in this District.

## PARTIES

4. Plaintiff, Be the Bush Recovery Ministries (hereinafter "Be the Bush") is a Tennessee non-profit corporation with IRC Section 510(c)(3) recognition and operates as a faith-based residential rehabilitation program for men recovering from addiction and other life controlling problems.

5. Defendant, Coffee County, is a municipal corporation, incorporated, legal subdivision of the State of Tennessee, created and existing by virtue of the Constitution and laws of Tennessee, and is empowered by the State to act through

its governing body, its officials, employees, and official bodies. The Defendant is a recipient of federal funds.

## STATEMENT OF FACTS

6. Be the Bush is a long-term, faith-based residential rehabilitation program for men recovering from addiction.

7. Be the Bush has been operating since September 1, 2018, to help men break free from the destructive cycle of addiction.

8. Be the Bush seeks to help men – grandfathers, fathers, sons, brothers, husbands – do more than achieve short-term sobriety; it endeavors to help men identify the causes of their addiction through community support, biblical counseling and education, accountability, job skill development – all designed to help men change their destructive behavioral patterns that led to addiction.

9. Caleb McCall is the founder and executive director of Be the Bush and has been working with men in recovery for more than three years.

10. Be the Bush is not a detox or a lockdown facility, nor is it a facility for the mentally ill.

11. Be the Bush does not provide trained medical staff on site, nor any medical treatment or prescribed medications on the Property for drug and/or alcohol addiction.

12. Be the Bush is not a facility for the criminally dangerous, the psychotic and/or for individuals who must be confined for their own protection or for the protection of others.

13. Be the Bush believes in the power of the gospel of Jesus Christ to rescue, heal and transform men recovering from addiction.

14. Be the Bush is providing a much-needed solution to the epidemic sweeping our country.

15. Recovery residences like the Be the Bush are in insufficient supply in middle Tennessee.

16. Be the Bush's residential ministry provides a highly structured twelve (12) month long residential program.

17. The success of residents enrolled in the program is attributable to the group living arrangement where the men living together build relationship and accountability together, the incorporation of biblical instruction and religious worship together, and a consistent environment free of drugs and alcohol.

18. Location in a residential zone or area far from the temptation of drugs and alcohol is important to and facilitates the recovery process.

19. While communities effected by and/or struggling with addiction problems struggle with increased violence, unemployment, lower education attainment, and/or lower income averages, the location of a recovery residence in a

community has been proven to reduce these negative impacts – especially faith-based programs such as Be the Bush.

20. Residents of the Be the Bush face significant limitations on their lives as a result of their addiction, including a disruption in personal relationships and impairment on their ability to advance in school and/or employment.

21. Residents at Be the Bush – prior to coming to live there – have already committed to abstain from drugs and alcohol and must demonstrate that they are drug-free before coming to reside there.

22. Residents of Be the Bush enroll in the program voluntarily and are not legally confined to the program.

23. Most residents at Be the Bush do not have their own vehicle while enrolled in the program, thus eliminating any traffic and/or parking concerns.

24. At the end of last year in 2021, Be the Bush was presented with the opportunity to purchase approximately 8 acres in Coffee County, commonly known as 2140 Riley Creek Road, Tullahoma, Tennessee 37388 ("the Property") and located in a rural area.

25. The Property is currently owned by the Keats and is used by them as a private residence.

26. Prior to the Keats' purchase of the Property, the Property served as the site for an elementary school.

27. The purchase price of the Property is $935,000.00.

28. Because Be the Bush is a newer non-profit organization, it was unable to secure a loan for the amount needed to purchase the Property, but a generous supporter of Be the Bush offered to provide the organization with a low-interest loan in the amount of $800,000 to purchase the Property.

29. Other donors and supporters have also offered to provide large donations to Be the Bush to help them purchase the Property.

30. The Property is located in the RS-1, low density residential zoning district and also lies within the Urban Growth Area for the City of Tullahoma.

31. Current uses operating within approximately a 1-mile radius of the Property include at least one commercial office building – i.e., a non-residential use.

32. The RS-1 zoning district is one of two residential zoning districts in the County. Uses permitted by right in the RS-1 district include single family dwellings, civil defense, fire department and police department facilities as well as educational facilities, private kindergartens, parochial and public. *See* Exhibit 1, Art. IV-8 and 9, for a true and accurate copy of relevant portions of Coffee County Zoning Resolution.

33. Uses permitted as special exceptions in the RS-1 zoning district include travel trailer parks and overnight campgrounds, private clubs and lodges, meeting

halls and recreational centers, art galleries, museums, indoor and outdoor commercial entertainment and sporting events, and recreational centers. *Id*.

34. Churches and/or religious facilities are, however, excluded altogether from the RS-1 zone. *Id.*

35. Upon learning that the Property was for sale, Be the Bush approached the County to determine whether its use as a residential home for individuals recovering from addiction would be permitted on the Property and in the RS-1 zone.

36. The County informed BTB that its use was not one contemplated and/or adequately defined in the zoning resolution and, thus, not permitted in the RS-1 district.

37. BTB then proposed an amendment to the zoning resolution to recognize and permit a new use in the RS-1 zoning district defined as "Non-profit Church, ministry, and/or other religious facility, funded solely by private donations or other fundraising activities, that provides education, skills training, and recovery support to its members, who may be housed at the facility."

38. In October 2021, Be the Bush's proposed amendment was considered by the County's Planning Commission and received a negative recommendation.

39. Be the Bush then revised and resubmitted the proposed amendment to allow the "non-profit church ministry" use by special exception in the RS-1 zoning district. *See* Exhibit 2.

40. On November 23, 2021, Be the Bush's proposed amendment was heard for a second time – this time as a special use exception in the RS-1 zoning district.

41. At the hearing, several people spoke in opposition to Be the Bush by expressing unfounded fears and concerns regarding Be the Bush and the residents it serves.

42. The County's District Attorney, Craig Northcott, spoke against the proposed amendment and suggested if Be the Bush's proposed amendment permitting a non-profit ministry by special exception was allowed – the County would be "importing criminals from all over the state into a RS-1 zone into Coffee County. This is a public safety issue."

43. District Attorney Northcott suggested that Be the Bush's proposed zoning amendment is really asking the Commission to "break the contract that you have with the citizens of this County by changing the R[S]-1 zoning laws. They invited the public, including me, to come forth and express any concern we might have."

44. District Attorney Northcott suggested that Be the Bush wanted to operate as a "halfway house" and suggested that Be the Bush might house sex offenders because all residents are asked to do is "fill out a form where they declare whether or not they have any type of record . . . They have to pinkie swear they are not a sex offender."

45. Be the Bush is not a halfway house and does not house sex offenders.

46. Be the Bush maintains a process for ensuring all residents are suitable for the program which includes a verification process to filter out sex offenders and the like.

47. District Attorney Northcott also claimed that Be the Bush's relocation to the Property could pose a public safety risk.

48. Be the Bush has operated for more than three years and has never posed any public safety risk to the community.

49. Also at the meeting, an attorney representing several neighbors opposed to Be the Bush's use made the following statement regarding Be the Bush: "The issue is whether or not the people in Coffee County who have purchased their homes on the strength of zoning regulations saying only single residential homes are going to be in this area where you can raise your family – we're not going to have group homes or things of that nature."

50. The Planning Commission voted once again to reject Be the Bush's proposed amendment.

51. Be the Bush's proposed amendment was then placed on the agenda as Resolution 2022-06 to be heard by the County Commission for a final decision at the next regularly scheduled meeting on January 11, 2021. *See* Exhibit 3 (Agenda for January 11, 2022 County Commission Meeting).

52. On December 13, 2021, the County received a notice from attorneys who practice extensively in land use planning and zoning law at Tune Entrekin and White, P.C., that adoption of the amendment proposed by the Be the Bush was "very appropriate and represents good planning on the part of the county," and placed the County on notice regarding applicable state and federal law specifically, the Tennessee Religious Freedom Restoration Act and the Religious Land Use and Institutionalized Persons Act (RLUIPA) which prohibit the government from inhibiting religious practice. *See* Exhibit 4.

53. On January 6, 2021, the County received a third notice, this time from undersigned counsel, the American Center for Law and Justice (ACLJ), putting the Commission on notice that Be the Bush is an organization protected under the Fair Housing Act (FHA) and Americans with Disabilities Act (ADA). *See* Exhibit 5

54. The ACLJ explained how the FHA and ADA applied to the County Commission's upcoming consideration of the proposed amendment; that the proposed amendment served as Be the Bush's request for reasonable accommodation under the FHA and ADA, and that the County should adopt the amendment in accordance with federal law.

55. On January 11, 2022, the County Commission heard and considered Be the Bush's proposed amendment and voted to reject Be the Bush's proposed amendment.

56. One Commissioner, Margaret Cunningham, publicly commented that Be the Bush was not currently permitted to operate in any zone, and suggested that the C-2 General Commercial zone would be the only zoning district that Be the Bush would fit in.

57. Another Commissioner, Dennis Hunt, who also serves on both the planning commission and the zoning board of appeals, commented that the zoning resolution does not contemplate Be the Bush's use at all and that Be the Bush's proposed amendment to add its use in the RS-1 zone was good and fair, and that it would give local government control but would help clean up the zoning which is discriminatory against such ministries.

58. One citizen who spoke at the hearing identified himself as a risk management accessor and made the unsupported assertion that Be the Bush would pose a major risk by housing people with an addiction.

59. Another citizen who spoke claimed his mother-in-law was so scared at the prospect of Be the Bush residing nearby that she would never go outside again.

60. Unlike these other uses permitted in the RS-1 district – many of which are non-residential – Be the Bush's proposed use is residential and will have significantly less impact on the surrounding area.

61. Uses permitted by right in the RS-1 district include police and fire departments, educational facilities, and civil defense facilities. Exhibit 1, at Art. IV-8.

62. Uses permitted in the RS-1 as special exceptions include duplexes, travel trailer parks and overnight campgrounds, civic, social, fraternal and philanthropic," private nonprofit clubs, lodges, meeting halls and recreation centers," "art galleries," "athletic associations," "libraries," "museums," "indoor and outdoor commercial entertainment and sporting events," "aquariums," and "nonprofit recreation centers and gymnasiums." *Id.* at Art. IV-9.

63. Unlike other uses permitted in the RS-1 district, Be the Bush will produce very little to no traffic and activity because the residents live together in a manner that resembles a family and most residents do not have vehicles while enrolled in the program.

64. No evidence was presented at the Planning Commission or County Commission meetings to support the position that Be the Bush's proposed amendment would fundamentally alter the RS-1 zoning district.

65. No evidence was presented at either the Planning Commission or County Commission meetings to suggest that Be the Bush's use would be inconsistent with and/or more intensive than other uses already permitted by special use.

66. No valid concerns were presented at the Planning Commission or County Commission meetings regarding parking or traffic.

67. The minutes of the County Commission meeting denying Be the Bush's proposed amendment is devoid of any justification for or reasoning to support denial of the proposed amendment. *See* Exhibit 6.

68. Following the Commissioners' denial of the proposed amendment, Be the Bush decided to explore other options and to request that the Property be rezoned to R-2 zoning district.

69. All of the following uses are permitted in the R-2 zone as conditional uses: assisted living facilities for the elderly or handicapped, convalescent homes, day care facilities for elderly persons, family care facilities, group care facilities, nursing homes, private clubs and lodges, meeting halls and recreational centers, art galleries, athletic associations, libraries, and museums. Exhibit 1, at Art. IV-7

70. Religious facilities and/or churches are not a recognized permitted use at all in the R-2 zoning district. *Id.*

71. The R-2 zoning district is the only other designated residential zoning district in the County.

72. On January 14, 2022, Be the Bush submitted an application for rezoning of the Property to R-2 to the City of Tullahoma (because the Property is located in

the Urban Growth Boundary of the City of Tullahoma, any request to rezone is first heard by the City of Tullahoma).

73. When Be the Bush first spoke with the City's Senior Planner, Mary Samaniego, she indicated that Be the Bush's use would likely be one permitted by conditional use in the R-2 zoning district, but indicated she would need to review the resolution to sure.

74. The zoning resolution defines "special personal group care facilities" as follows: "This is a general term that is intended to include residential facilities for the care of elderly or infirm persons who may require special care and/or supervision. The term is intended to include facilities that are principally residential in nature but wherein long term medical or rehabilitative services are provided for the residents. This term is not intended to include facilities for the criminally dangerous or psychotic. Exhibit 1, Appendix 1, at p. 23.

75. Facilities falling under "special personal group care facilities" include "assisted living facilities for elderly or handicapped persons," "convalescent homes," "family care facilities," "group care facilities," and "day-care facilities for elderly persons." *Id.*

76. The zoning resolution defines "group care facilities" as "a licensed facility wherein residential services are provided to nine (9) or more unrelated individuals, who are handicapped, aged, disabled or otherwise in need of adult

supervision in accordance with their individual needs. This grouping does not include facilities providing residential services to delinquent minors, the criminally dangerous, the addicted, and/or mentally ill individuals." *Id.*

77. Assisted living facilities for the elderly and handicapped is defined as "A residential facility other than a dwelling unit (as defined above) intended for occupancy by unrelated individuals who are handicapped, aged, or disabled and wherein meals are prepared and served in a common dining facility and limited assistance is provided for daily activities." *Id.*

78. On January 18, 2022, however, Ms. Samaniego (after speaking with the County) contacted Be the Bush via email and informed it that its use "would be considered a "special institutional care facilities" and that such "use is only allowed as a Conditional Use in the C-2 zoning district." *See* Exhibit 7, at p. 5-6.

79. In this same email, Ms. Samaniego stated that the Property "is not eligible for a rezoning for your proposed use. City of Tullahoma staff will withdraw your rezoning application and refund your $300 filing fee." *Id.*

80. The zoning resolution defines "special institutional care facilities" as follows: "This is a general term that is intended to include all facilities that involve forced residency, full time supervision and care for: (1) individuals who are legally confined due to violations of law; (2) *individuals who are addicted to drugs and/or alcohol*; and (3) individuals who are mentally ill, including the criminally dangerous

or others who for their own protection or the protection of society must be confined." (Emphasis added). Exhibit 1, Appendix at p. 23 (emphasis added).

81. "Special institutional care facilities" are not permitted in any zoning district in the County except for C-2 General Commercial District. *See generally*, Exhibit, Art. IV.

82. The C-2 General Commercial District is defined as an area in which "the principal use of land is devoted to general and highway commercial activities along roadways classified as arterials as shown on the Major Thoroughfare Plan of Coffee County." Exhibit 1, at Art. IV-5 and 6.

83. On January 19, 2022, Be the Bush, via its legal counsel, contacted Ms. Samaniego to explain that Be the Bush does not fit the definition of "special institutional care facility" because it is neither a lockdown nor a detox facility and it does not house criminally dangerous, psychotic or mentally ill individuals. Exhibit 7, at 3.

84. In this same email, Be the Bush inquired how it is different from that of an "assisted living facility[y] for elderly or handicapped persons." *Id*.

85. On January 19, 2022, Ms. Samaniego replied to Be the Bush legal counsel and insisted on the definition of special institutional care facility to describe Be the Bush's proposed use. In her email, she asserted that "family care facilities and "group care facilities" specifically exclude residential services for "the

addicted," and that "assisted living facility for elderly or handicapped persons" requires a state license. *Id*. at 1.

86. The zoning resolution does not, however, define "assisted living facility for elderly or handicapped person" to require any licensure by or from the State. Exhibit 1, Appendix at 23.

87. In the meantime, on January 24, 2022, Be the Bush, by and through legal counsel, again put the County on notice that its zoning resolution, as written and applied by County officials to Be the Bush, violates federal law and requested that the County rectify the violations, treat Be the Bush the same as similarly situated uses and grant Be the Bush the opportunity to reside in a residential zone like similar comparators. *See* Exhibit 8.

88. Following ACLJ's January 24, 2022 to the County, Be the Bush's Founder, Caleb McCall, personally called several Commissioners who voted to deny the proposed amendment in an attempt to convince them to reconsider.

89. In Mr. McCall's conversation with Commissioner Tildon Stubblefield, the Commissioner told McCall that if the home was "for drug people and if the neighbors didn't want it, he wouldn't vote for it."

90. In Mr. McCall's conversation with Commissioner Margaret Cunningham, the Commissioner told McCall that C-2 is the only place Be the Bush

will be allowed and that she would not vote for any law or resolution to allow Be the Bush in a residential area to protect the citizens.

91. Despite notice to the County that the zoning resolution is facially discriminatory, the County has refused to take any action to amend its zoning ordinances to allow Be the Bush an equal opportunity to reside in a residential zoning district.

92. Shortly thereafter, Be the Bush followed up to provide additional information to the City and then asked the City to explain how a residential home for individuals recovering from addiction was more intense and/or differed from the numerous conditional uses permitted in the R-2 district including assisted facilities for the handicapped, group care facilities, bed and breakfast establishments and nursing homes. Exhibit 9, at 1.

93. The City did not answer the question and suggested that all questions should be directed to the County "as they drafted and adopted the zoning resolution regulations. Ultimately, it is Coffee County's responsibility to administer their zoning code." Exhibit 9, at 1.

94. Shortly thereafter, Be the Bush, through undersigned counsel forwarded the City's email to the County's attorney and requested the County's official position – *i.e.*, whether the County also interprets the zoning resolution to

exclude residential group home for individuals recovering from addiction from all zoning districts except for the C-2 commercial district. *See* Exhibit 10, at 2-3.

95. Be the Bush also asked the County for an explanation as to how Be the Bush' use would differ in intensity and/or number of residents from the numerous conditional uses permitted in the R-2 district "including assisted living facility (which does not contain a resident limit), group care facilities (permitting up to nine unrelated individuals), nursing homes (which does not contain a resident limit), bed and breakfast establishments (permitting up to 3 rooms and up to 3 persons or an entire family unit in each room)?" *Id.*

96. On March 7, 2022, the County's attorney responded to Be the Bush inquiry and affirmed that Be the Bush is limited solely to the C-2 commercial district. *Id.* at 1.

97. The County's attorney did not provide any explanation or support for the disparate treatment of Be the Bush. *Id.*

98. Unlike the C-2 commercial district (devoted to general highway and commercial activities) and to which Be the Bush is confined under Coffee County's zoning resolution, a residential zoning district facilitates the family-style living environment it strives to provide to residents.

99. Permitted uses in the C-2 district are primarily commercial uses, not residential and include, for example, automotive sales and services, general business

and communications, outdoor material and equipment sales, warehousing goods, restaurants and convenience retail sales and services. Exhibit 1, at Art. IV-5 and 6.

100. Be the Bush's proposed use of the Property is practically identical in all zoning respects to that of assisted living facilities, group care facilities and other "special group care facilities." The only difference is the type of residents served by Be the Bush – *i.e.*, individuals struggling to overcome addiction.

101. Defendant's conduct has frustrated the mission, and severely burdened the religious exercise, of Be the Bush and its residents

102. Defendant's conduct constitutes ongoing irreparable harm and a threat of future harm if Defendant is permitted to continue with its discriminatory conduct against Plaintiff.

103. On or about March 9, 2022, another residential non-profit organization, And Many More Home for Teen Moms, announced on their Facebook page that they were under contract to purchase the same Property.

104. On their Facebook page, AMM identifies itself as "a group home in Rutherford County, TN for teen moms and their babies."

105. Be the Bush has since been informed by the supporter who offered to provide a low interest loan to purchase the Property that if there is further delay in securing the Property, he will need to consider another ministry for the loan.

106. As a result of the County's facially discriminatory resolution and its subsequent efforts to deny Be the Bush access to the RS-1 and R-2 residential zones, Be the Bush is likely to lose the $800,000 loan previously offered by a generous supporter of the ministry.

## COUNT I
## Violation of the Fair Housing Act
## (42 U.S.C. § 3604, *et seq.*)

107. Paragraphs 1 through 106 are incorporated by reference as if set forth fully herein.

108. The Fair Housing Act guarantees fair housing to individuals with disabilities and makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f)(1).

109. Plaintiff constitutes a person with a handicap under the Fair Housing Act, 42 U.S.C. § 3602(d), (h) and (i), and has suffered damages, economic loss, and loss of civil rights as a result of Defendant's conduct.

110. Plaintiff's use of the Property constitutes a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

111. The Defendant, through actions described above, has (1) denied or otherwise made a dwelling unavailable because of disability in violation of 42 U.S.C. § 3604(f)(1), and (2) discriminated in the terms, conditions, or privileges of

housing, and in the provision of services in connection with housing, because of disability in violation of 42 U.S.C. § 3604(f)(2).

112. Defendant's conduct described above constitutes (1) a pattern and practice of resistance to the full enjoyment of rights granted by the Fair Housing Act under 42 U.S.C. § 3614(a) and (2) denial to a group of persons of rights granted by the Fair Housing

113. The Defendant violated Plaintiff's rights under the Fair Housing Act by:

a. Discriminating against Plaintiff because of their disability;

b. Treating Plaintiff disparately or less favorably than similarly situated individuals; and

c. Refusing to make reasonable accommodations in the zoning resolution to afford the Plaintiff an equal opportunity to use and enjoy the Property.

114. The effect of Defendant's actions is to deny Plaintiff and deny needed housing to those receiving assistance and support from Plaintiff for recovery from alcohol and drug addiction.

**COUNT II**
**Violation of the Americans With Disabilities Act**
**(42 U.S.C. § 12102, *et seq.*)**

115. Paragraphs 1 through 106 are incorporated by reference as if set forth fully herein.

116. The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

117. The Plaintiff is associated with and provides housing to people with disabilities as defined in 42 U.S.C. § 12102(2) and is a covered entity.

118. The Defendant Coffee County is a public entity under 42 U.S.C. § 12131(1).

119. 42 U.S.C. § 12202 provides: "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [1] Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

120. The actions of the Defendant to exclude Plaintiff from all residential zoning districts in the County and to deny a proposed amendment to the zoning resolution to allow Plaintiff a reasonable accommodation violates Plaintiff's rights and those seeking its assistance under the Americans with Disabilities Act, 42 U.S.C. §12132 *et seq*. and the regulations promulgated thereunder by, among other ways:

a. Using land resolutions and methods of administering those resolutions for the purpose of subjecting Plaintiff Be the Bush to discrimination on the basis of their handicap;
b. denying housing and attempting to make housing unavailable to those seeking assistance from Plaintiff because of their disability;
c. denying Plaintiff and its residents an equal opportunity to participate in the benefits of services, programs, or activities of a public entity.

**COUNT III**
**Violation of the Religious Land Use and Institutionalized Persons Act of 2000**
**"Substantial Burden on Religious Exercise"**
**(42 U.S.C. § 2000cc(a))**

121. Paragraphs 1 through 106 are incorporated by reference as if set forth fully herein.

122. The Defendant constitutes a "government" pursuant to 42 U.S.C. § 2000cc-5(4)(A)(i), (ii).

123. Be the Bush constitutes a "religious assembly or institution" pursuant to 42 U.S.C. § 2000cc(a)(1).

124. "Religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief" pursuant to 42 U.S.C. § 2000cc-5(7)(A), and "the use, building or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. §2000cc-5(7)(B).

125. Defendant's zoning resolution as written and as applied imposes land use regulations in a manner that treats religious assemblies on less than equal terms with nonreligious assemblies and institutions, including but not limited to educational facilities, private clubs and lodges, museums, libraries, theatres, and indoor and outdoor recreational facilities in violation of the equal terms provision of RLUIPA, 42 U.S.C. 2000(cc(b).

126. Defendant's zoning resolution as written, and as applied to deny Be the Bush's proposed amendment to allow a non-profit ministry in the RS-1 zoning district constitutes a substantial burden on the religious exercise of Be the Bush in violation of Section 2(a)(1) of RLUIPA, 42 U.S.C. 2000cc(a)(1).

127. Defendant's actions do not further a compelling government interest and are not the least restrictive means of furthering a compelling government interest.

128. Defendant has deprived and continues to deprive Plaintiff of its right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act of 2000, by imposing and implementing the challenged land use regulations.

**COUNT IV**
**Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**
**(42 U.S.C. § 1983)**

129. Paragraphs 1 through 106 are incorporated by reference as if set forth fully herein.

130. All of the acts of Defendant complained of in this First Amended Complaint were performed under color of State law, resolution, regulation, custom, and/or usage, and were in violation of the rights, privileges and immunities secured to Plaintiff by the Constitution of the United States and constitute a violation of the provisions of 42 U.S.C. § 1983.

131. Defendant County's zoning resolution – on its face – excludes Plaintiff, and all individuals recovering from addiction who require a supportive living environment, from all residential zoning districts while permitting similarly situated uses.

132. Defendant County's zoning resolution targets Plaintiff because of the residents and people it provides assistance to – *i.e.*, people suffering from a disability.

133. Defendant County's zoning resolution is unconstitutional and Defendant's refusal to amend the resolution to remove the unequal treatment is exclusionary, arbitrary, capricious, and without any rational basis.

134. The actions of Defendant in treating Plaintiff differently and less favorably than similarly situated individuals and property owners, and has deprived and continues to deprive Plaintiff of its right to equal protection of the laws, as secured by the Fourteenth Amendment to the United States Constitution.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

(a) A declaration that the Defendant's zoning resolution as written and as applied to exclude Plaintiff from all residential zoning districts discriminatory, illegal and unconstitutional in violation of the United States Constitution, the Fair Housing Act, the Americans with Disabilities Act, and the Religious Land Use and Institutionalized Persons Act of 2000;

(b) A declaration that the Defendant's actions in denying the Plaintiff a reasonable accommodation is illegal and unconstitutional as violating the Fair Housing Act, Americans with Disabilities Act, and the United States Constitution;

(c) Permanent injunctive relief preventing Defendant from illegally and unconstitutionally applying the County's laws, practices and policies to Plaintiff's

use of the Property, including, but not limited to, enjoining Defendant from applying its laws, practices and policies in a manner that substantially burdens Plaintiff's religious exercise, or from applying those laws, practices and policies in a discriminatory manner, and otherwise enjoining Defendant from preventing Plaintiff's exercise of constitutional and statutory rights;

(d) Reverse the denial of Plaintiff's proposed amendment to the zoning resolution and permit its proposed use as a non-profit residential ministry in the RS-1 zoning district;

(e) A declaratory judgment and/or an injunction pursuant to 42 U.S.C. § 1983;

(f) An award to Plaintiff of monetary damages in the amount of $500,000; together with any special damages arising out of the Defendant's conduct as described in the Complaint;

(g) An award to Plaintiff of nominal damages;

(h) An award of attorney fees and costs as provided by federal statute; and

(i) Such other and further relief as this Court may deem just and appropriate.

## DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in this action of all issues so triable.

Dated March 22, 2022

Respectfully submitted,

F. Clinton Little
F. Clinton Little
(TN Bar #033412)
Law Offices of F. Clinton Little
109 S. Northshore Dr., Suite 401
Knoxville, TN 37919
T: 865.622.4628
F: 865.315.7086
E: clinton@knoxvilleattorney.law

Abigail Southerland*
(TN Bar #026608)
AMERICAN CENTER FOR LAW AND JUSTICE
625 Bakers Bridge Ave, Suite 105-121
Franklin, TN 37067
Ph: (800) 296-4529
Fax: (615) 309-8832
asoutherland@aclj.org

Stuart Roth
(D.C. Bar No. 475937)
Mark Goldfeder
(Bar No. NY 5275649)
Benjamin P. Sisney
(D.C. Bar. No. 1044721)
THE AMERICAN CENTER FOR LAW AND JUSTICE
201 Maryland Avenue, N.E.
Washington, D.C. 20002
Telephone: (202) 546-8890

Facsimile: (202) 546-9309
goldfed@gmail.com
bsisney@aclj.org

**Pro Hac Vice pending or to be filed*

**ATTORNEYS FOR PLAINTIFF**

**VERIFICATION**

STATE OF TENNESSEE
COFFEE COUNTY

I, Caleb McCall, being duly sworn, do hereby make oath that the information contained in the foregoing Complaint is true and correct to the best of my knowledge, information and belief.

Caleb McCall

Sworn to and subscribed before me this 22 day of MARCH, 2022.

NOTARY PUBLIC

My commission expires: 5/17/2023

JEFFREY L. JACKSON STATE OF TENNESSEE NOTARY PUBLIC COFFEE COUNTY MY COMMISSION EXPIRES 5-17-2023



Case 4:22-cv-00016-CLC-SKL Document 1 Filed 03/22/22 Page 31 of 31 PageID #: 31